IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SALUTOCEUTICALS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:23-CV-645-DII |
| | § | |
| UNITED STATES SMALL BUSINESS | § | |
| ADMINISTRATION; ISABELLA CASILLAS | § | |
| GUZMAN, *in her Official Capacity as Administrator* | § | |
| *of the Small Business Administration*; JANET | § | |
| YELLEN, *in her Official Capacity as United States* | § | |
| *Secretary of Treasury*; and THE UNITED STATES | § | |
| OF AMERICA, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are Plaintiff Salutoceuticals, LLC's ("Plaintiff") motion for judgment on

the pleadings, (Dkt. 13); Defendants United States Small Business Administration (the "SBA"),

Isabella Casillas Guzman, in her official capacity as Administrator of the SBA, Janet Yellen, in her

official capacity as United States Secretary of Treasury, and the United States of America's

(collectively, "Defendants") combined motion for summary judgment and response to Plaintiff's

motion for judgment on the pleadings, (Dkt. 21); and all responsive briefing, (Dkts. 23, 24, 25, 27,

28, 29). Having considered the parties' briefing, the administrative record, (Dkt. 18), and the relevant

law, the Court will deny Plaintiff's motion for judgment on the pleadings and grant Defendants'

motion for summary judgment.

## I. BACKGROUND

This is an Administrative Procedure Act ("APA") case in which Plaintiff challenges the

SBA's denial of Plaintiff's Paycheck Protection Program ("PPP") loan forgiveness application.

Plaintiff also challenges the SBA's promulgation and application of an April 2020 Interim Final Rule

to it. The Court will begin by providing relevant background on the statutes and regulations at issue in the case before turning to the factual and procedural history of this case.

**A. Statutory Background of the CARES Act and the Paycheck Protection Program**

1. PPP Loans

The PPP was enacted by Congress on March 27, 2020, as part of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"). Pub. L. No. 116-136, 134 Stat. 281 (2020). Congress passed the CARES Act to provide emergency assistance and other support to individuals, families, businesses, and health-care providers coping with the coronavirus pandemic. *See* SBA, Bus. Loan Program Temp. Changes; Paycheck Protection Program, Interim Final Rule, 85 Fed. Reg. 20,811, 20,811-12 (Apr. 15, 2020) ("First PPP IFR"). At issue here is the CARES Act Section 1102, enacted to extend relief to small businesses and self-employed individuals experiencing economic hardship because of public-health measures enacted to minimize the public's exposure to the coronavirus. *See* First PPP IFR, 85 Fed. Reg. at 20,811.

The SBA was enacted in 1958 to "aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns." Pub. L. No. 85-536, 72 Stat. 384 (1958) (codified as amended at 15 U.S.C. § 631(a), *et seq.*); *see also* 15 U.S.C. § 633(a) (establishing the SBA). The SBA's primary mechanism for aiding small businesses is by financing private "Section 7(a) loans" under the Small Business Act. 15 U.S.C. § 636(a) ("Section 7(a)"). Although the SBA guarantees these loans, they are typically issued by private lenders rather than through direct disbursals from the SBA. *Id.*; *see also United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 719 n.3 (1979). In addition to creating Section 7(a) loans, the Small Business Act authorizes the SBA Administrator to "make such rules and regulations as "he deems necessary" to implement the loan program. 15 U.S.C. § 634(b)(6); *see also id.* at § 634(b)(7) (vesting the SBA Administrator with the authority to create rules and "take any and all

actions . . . when he determines such actions are necessary or desirable in making, servicing, . . . or otherwise dealing with or realizing on loans made under the provisions of [the Act]").

Section 1102(a)(2) of the CARES Act established the PPP as a temporary expansion of SBA's pre-existing business-loan authority under Section 7(a) by adding a new paragraph—Paragraph 36—to Section 7(a). 15 U.S.C. § 636(a)(36). The PPP was not created as a standalone program; instead, it was added into Section 7(a), albeit with several of that subsection's general eligibility requirements relaxed. CARES Act, § 1102, 134 Stat. at 286 (amending 15 U.S.C. § 7(a)). Section 636(a)(36)(B) states that "[e]xcept as otherwise provided in this paragraph, the [SBA] may guarantee [PPP] loans under the same terms, conditions, and processes as [other] loan[s] made under" Section 7(a). The statute then set forth in detail the precise ways in which PPP loans would differ from other Section 7(a) loans. *Id.* § 636(a)(36)(D)–(W). Among these differences, the CARES Act authorized the SBA to guarantee PPP loans not only to small businesses, but also to certain nonprofit organizations, veterans' organizations, Tribal business concerns, self-employed persons, and, as relevant here, independent contractors. *Id.* § 636(a)(36)(D)(i), (ii).

The CARES Act prescribed in detail how to calculate the maximum loan amount for which a PPP borrower could apply. *Id.* § 636(a)(36)(E). Generally speaking, the maximum allowable amount of a PPP loan was the lesser of $10 million or "the sum of" (i) the borrower's monthly "payroll costs," multiplied by 2.5, and (ii) the outstanding balance of any economic injury disaster loan the borrower obtained under section 7(b) of the Small Business Act, 15 U.S.C. § 636(b) ("EIDL loan"), between January 31, 2020, and the PPP's launch on April 3, 2020. 15 U.S.C. § 636(a)(36)(E)(i). "Payroll costs," as used in subparagraph 636(a)(36)(E), was defined by the Act at Section 636(a)(36)(A)(viii). As described below, the precise meaning of this subsection is the primary issue in this suit.

It is clear from the text of the CARES Act and the implementing regulations that the PPP was to be quickly put into effect to extend relief to the county's small businesses without delay. To that end, the CARES Act authorized the SBA to guarantee up to $349 billion in PPP loans during the initial three-month period ending on June 30, 2020. CARES Act § 1102(b)(1); 15 U.S.C. § 636(a)(36)(A)(ii)-(iii), (B). Congress also streamlined Section 7(a)'s loan-origination requirements for PPP borrowers by, for example, eliminating borrower collateral and personal loan-guarantee requirements. 15 U.S.C. § 636(a)(36)(J). The SBA also permitted additional qualified lending institutions that were not already accredited Section 7(a) lenders to participate in the PPP and mandated that all PPP lenders be given "delegated authority" to make and approve PPP loans without prior SBA review. *Id.* at § 636(a)(36)(F)(ii)(I), (iii). Last, Congress instructed the SBA to issue regulations implementing the PPP within just 15 days of the CARES Act's enactment, 15 U.S.C. § 9012, a timeline that one court has described as "warp speed for regulatory action," *see In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1262 (11th Cir. 2020). Recognizing that the rulemaking deadline would otherwise be impossible, Congress freed the SBA from the typical notice-and-comment requirements associated with the federal rulemaking process. 15 U.S.C. § 9012 (citing 5 U.S.C. § 553(b)).

### 2. PPP Loan Forgiveness

Section 1106 of the CARES Act, as amended, allows eligible recipients of PPP loans to obtain forgiveness of their loans in whole or in part. 15 U.S.C. § 636m(b)-(d). To obtain forgiveness, an eligible borrower submits an application and supporting documentation to its lender, which then determines whether the borrower is entitled to forgiveness under the Act, and, if so, submits a request for payment to the SBA. 15 U.S.C. § 636m(g); SBA, Bus. Loan Program Temp. Changes; [PPP]—Revisions to Loan Forgiveness and Loan Review Procedures, Interim Final Rule, 85 Fed. Reg. 38304, 38306 (June 26, 2020). The SBA then remits the appropriate amount to the lender—

subject, however, to any SBA review of the loan. 15 U.S.C. § 636m(c)(3); 85 Fed. Reg. at 38306. Although the SBA initially required that borrowers spend at least 75 percent of their loan proceeds on payroll costs in order to qualify for forgiveness, 85 Fed. Reg. at 20,813-14 (§ III(2)(o)), the PPP Flexibility Act, Pub. L. No. 116–142, 134 Stat. 641, § 3(a), enacted in June 2020, modified that rule, requiring borrowers to use at least 60 percent of their PPP loan proceeds for "payroll costs," and up to 40 percent for other enumerated categories of "covered" expenses incurred during the "covered period" (a period of 8 or 24 weeks, at the borrower's election, following origination of the loan). 134 Stat. 641 § 3(b)(2)(B) (adding 15 U.S.C. § 636m(d)(8)); *see also* 15 U.S.C. § 636m(a)(4).

Under the CARES Act, the amount of forgiveness for which a PPP borrower is eligible is generally calculated as "the sum of" its "[p]ayroll costs" and the seven other categories of covered expenses incurred during the covered period, 15 U.S.C. §§ 636m(b); *see id.* at § 636m(a)(4), though it may not exceed the principal amount of the loan, *id.* § 636m(d)(1). "[P]ayroll costs" has the same meaning for loan-forgiveness purposes as for calculating a borrower's maximum loan amount. *Id.* § 636m(a)(12). The statute also provides that forgiveness must be reduced in either or both of two circumstances. First, if the borrower reduced the number of its employees during the covered period, then its forgiveness amount is correspondingly decreased. *Id.* § 636m(d)(2). Second, in general, a borrower's forgiveness amount must also be cut by the amount of any reduction of 25 percent or more in the total salary or wages the borrower paid to any employees during the covered period. *Id.* § 636m(d)(3). The statute mandates no similar cuts in forgiveness, however, if a small business reduced the number of its independent contractors, or reduced the compensation it paid to them, during the covered period. *See generally id.* § 636m(d)(2), (3), (5), (7).

To obtain forgiveness borrowers must also meet certain documentation requirements. *Id.* § 636m(f). For loans greater than $150,000, borrowers seeking forgiveness must submit (i) documentation verifying their number of "full-time equivalent employees on payroll and [their] pay

rates"; (ii) documentation verifying payments for the other seven categories of covered expenses; (iii) a certification that, *inter alia*, the amount for which forgiveness is sought was used to "retain employees" or make payments for the other seven categories of covered expenses; and (iv) any other documentation SBA determines necessary. *Id.* § 636m(e). For loans not exceeding $150,000, borrowers need only submit one-page certifications providing (as pertinent here) "a description of the number of employees" the borrower was able to retain with the loan, and the estimated amount of the loan spent on "payroll costs." *Id.* § 636m(l)(A)(i)(II)(aa), (bb). The statute does not require, however, that forgiveness applicants document the number of their independent contractors, certify that loan proceeds were used to retain independent contractors, or describe the number of independent contractors that they were able to retain with their loans.

### 3. The First PPP Interim Final Rule

Pursuant to its authority under 15 U.S.C. § 9012, the SBA issued several interim final rules ("IFRs") implementing the PPP. The SBA (in conjunction with the Department of Treasury) issued the First PPP IFR less than a week after the CARES Act's March 27, 2020 enactment. The First PPP IFR was posted on the SBA and Treasury websites on April 2, 2020, with an effective date of April 15, 2020, and expressly "applie[d] to applications submitted under the [PPP] through June 30, 2020, or until funds made available for this purpose are exhausted." Bus. Loan Program Temp. Changes, [PPP], Interim Final Rule, 85 Fed. Reg. 20,811, 20,817, 20,818 (Apr. 15, 2020); *see also Seville Indus. LLC v. U.S. Small Bus. Admin.*, No. 6:22-CV-06229, 2024 WL 697592, at *2 (W.D. La. Feb. 20, 2024).

The purpose of the First PPP IFR was to "outline[ ] the key provisions of the PPP" by setting forth borrower eligibility and application requirements for PPP loans, 85 Fed. Reg. at 20,812-15 (§ III(2)), and lenders' responsibilities under the streamlined PPP underwriting process, *id.* at 20,815-16 (§ III(3)). As relevant here, the rule explained: (1) that under the terms of the CARES Act,

6

the maximum size of a PPP loan was calculated "using a payroll-based formula specified in the Act," *id.* at 20,812 (§ III(2)(d) and (e)); (2) that "payroll costs" for this purpose consisted of compensation to employees residing principally in the United States, "and for an independent contractor or sole proprietor," compensation in the form of wages, commissions, income, or net earnings from self-employment, *id.* at 20,813 (§ III(2)(f)); and (3) that independent contractors "do not count for purposes of a borrower's PPP loan calculation" or "PPP loan forgiveness" because they "have the ability to apply for a PPP loan on their own," *id.* at 20,813, 20,814 (§ III(2)(h), (p)). The PPP launched the day after announcement of the First PPP IFR, on April 3, 2020.[1]

The First PPP IFR also authorized qualified lenders to approve and issue PPP loans, *see* First PPP IFR, 85 Fed. Reg. at 20815, 20816, and established a streamlined PPP loan-origination process, in which: (1) the usual Section 7(a) underwriting requirements were waived; (2) borrowers were permitted to self-certify their eligibility on PPP loan applications submitted to lenders; (3) lenders were permitted to rely (in good faith) on borrowers' self-certifications, documentation, and calculations; and (4) lenders could obtain the SBA's guarantee for a loan by certifying to the SBA that the borrower had made the necessary certifications and had submitted the needed documentation. *Id.* at 20182, 20814-16; SBA Forms 2483, 2484. Under this process, however, lenders were not required to forward borrowers' applications or supporting documentation to the SBA, but instead maintained these records in their files. First PPP IFR, 85 Fed. Reg. at 20814. As a result, the SBA did not, and could not, make independent PPP borrower-eligibility determinations at the loan-origination stage.

---

[1] *See* SBA Release No. 20-30, https://www.sba.gov/article/2020/apr/03/sbas-paycheckprotection-program-small-businesses-affected-coronavirus-pandemic-launches.

### 4. The SBA Review of PPP Loans

To protect the integrity of the PPP, in June 2020, the SBA announced a system of PPP loan review. SBA, Bus. Loan Program Temp. Changes; [PPP]—SBA Loan Review Procedures and Related Borrower and Lender Responsibilities, 85 Fed. Reg. 33,010, 33,012 (June 1, 2020); *see id.* at 33,013. As the SBA explained, the Small Business Act authorizes the SBA to conduct audits and investigations, 15 U.S.C. § 634(b)(11), and to take such other actions as may be necessary or desirable, *see id.* § 634(b)(6), (7), to ensure that recipients of Section 7(a) assistance follow program rules and regulations. 85 Fed. Reg. at 33,012. Under this authority, the SBA determined that it would be appropriate to review PPP loans, in the agency's discretion, when borrowers' loan documentation (or any other information) indicates that borrowers may be ineligible for their loans or for loan forgiveness in the full amount claimed. *Id.* If during a review SBA determines that the borrower was ineligible for its loan, or for the amount received, then forgiveness will be denied in whole or in part, respectively. *See id.*

### B. Plaintiff's Loan Forgiveness Application and This Lawsuit

Plaintiff is a small business based out of Austin, Texas that makes, sells, and distributes an all-natural sleep aid—Doc Parsley's Sleep Remedy. (Compl., Dkt. 1, ¶¶ 4, 25). On April 3, 2020, Plaintiff submitted a PPP Borrower Application to Bank of America for a PPP loan in the amount of $84,537.00 to mitigate business losses Plaintiff was experiencing due to the pandemic and economic downturn. (*Id.* ¶ 32). In calculating its "payroll costs" on the loan application, Plaintiff included payments it had made to its independent contractors. (*See* SBA OHA Decision, Dkt. 18-6, at 8, 10–11). Plaintiff was approved to receive the loan on May 6, 2020, and the loan proceeds were distributed on May 8, 2020. (Compl., Dkt. 1, ¶¶ 33, 34; *see also* CAR, Dkt. 18-2, at 16).

On or about February 16, 2021, Plaintiff executed a PPP Loan Forgiveness Application Form 3508S requesting forgiveness for the full amount of the loan. (*See* SBA OHA Decision, Dkt.

18-6, at 2). On April 26, 2022, the SBA informed Plaintiff that its loan forgiveness application was denied. (CAR, Dkt. 18-2, at 8–10). The basis for SBA's decision that Plaintiff was ineligible for forgiveness of the total PPP loan amount received was the following: "[a]fter review of the documentation provided, the SBA conclude[d] that the borrower did not have any eligible payroll costs at the time of the loan application." (*Id.*). Plaintiff then pursued an administrative appeal, and on November 4, 2022, the SBA's Office of Hearing and Appeals affirmed the SBA's decision. (*See* SBA OHA Decision, Dkt. 18-6, at 12).

On June 7, 2023, Plaintiff filed its complaint with this Court, bringing three claims under the APA (Dkt. 1). Plaintiff argues that the SBA's denial of its PPP loan forgiveness application was unlawful because (1) it was based on retroactive application of the First PPP IFR; (2) the First PPP IFR is contrary to the text of the CARES Act; and (3) the SBA's decision is arbitrary and capricious. (*Id.* ¶¶ 47–83). Plaintiff requests that the Court vacate Defendants' decision denying its loan forgiveness application, order Defendants to grant forgiveness of Plaintiff's loan, and award Plaintiff its reasonable attorney's fees. (Dkt. 13, at 16).

On October 24, 2024, Plaintiff filed the instant motion for judgment on the pleadings. (Dkt. 13). In response, Defendants moved to stay briefing on Plaintiff's motion until Defendants could lodge a certified administrative record and Plaintiff could raise any objections to the record. (Dkt. 14). On November 9, 2023, the Court granted Defendants' request, setting a schedule for the parties to lodge a certified administrative record and any objections to it. (Order, Dkt. 17). The Court also allowed Defendants to file a combined response to Plaintiff's motion for judgment on the pleadings and a cross-motion for summary judgment. The Court then set a briefing schedule for the parties to file responses and replies to the cross-motions. (*Id.*).

On December 1, 2023, Defendants filed a certified administrative record (Dkt. 18). Plaintiff did not file any objections to the record. On January 17, 2024, Defendants filed their combined

response to Plaintiff's motion for judgment on the pleadings and motion for summary judgment. (Dkt. 21). On February 14, 2024, Plaintiff filed its combined response to Defendants' cross-motion and its reply in support of its own motion. (Dkt. 23). On February 27, 2024, Defendants filed its reply in support of its motion for summary judgment. (Dkt. 25). The parties have also filed two notices of supplemental authority, (Dkts. 24, 28), and responses to those notices, (Dkts. 27, 29). All issues having been fully briefed by the parties, the cross-motions are now ripe for resolution.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Further, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343

(5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000).

### III. DISCUSSION

In its motion, Plaintiff asks this Court to vacate the SBA's decision denying Plaintiff's PPP loan forgiveness application and instruct the SBA to grant forgiveness of Plaintiff's PPP loan. (Dkt. 13, at 16). Defendants seek a judgment affirming the SBA's decision as a matter of law. (Dkt. 21, at 32). For the reasons that follow, the Court finds that summary judgment should be entered in favor of Defendants.

Plaintiff argues that the SBA's decision was arbitrary and capricious because the First PPP IFR violates the CARES Act and because the SBA retroactively applied the First PPP IFR to Plaintiff's PPP loan forgiveness application. (Dkt. 13, at 3–4). According to Plaintiff, at the time that it applied for its PPP loan, the CARES Act allowed for payments made by a business to its independent contractors to be included in eligible payroll costs. However, in denying Plaintiff's loan forgiveness application, Plaintiff argues that the SBA improperly applied the First PPP IFR to Plaintiff's loan retroactively. (*Id.* at 5–9). In response, Defendants argue that the statutory text of the CARES Act establishes that a business's independent contractor costs are not "payroll costs" to be considered in determining the size of a PPP loan. Thus, according to Defendants, the SBA's decision to deny Plaintiff's loan forgiveness was proper under the text of the CARES Act— regardless of the implementation date of the First PPP IFR. (Dkt. 21, at 1–3).

The crux of the parties' dispute focuses on what the proper interpretation of the term "payroll costs" is under the CARES Act, 15 U.S.C. § 636(a)(36)(A)(viii). This provision states:

> (viii) the term "payroll costs"—
>> (I) means
>>> (aa) the sum of payments of any compensation with respect to employees that is a—
>>>> (AA) salary, wage, commission, or similar compensation;
>>>> (BB) payment of cash tip or equivalent;
>>>> (CC) payment for vacation, parental, family, medical, or sick leave;
>>>> (DD) allowance for dismissal or separation;
>>>> (EE) payment required for the provisions of group health care or group life, disability, vision, or dental insurance benefits, including insurance premiums;
>>>> (FF) payment of any retirement benefit; or
>>>> (GG) payment of State or local tax assessed on the compensation of employees; and
>>> (bb) the sum of payments of any compensation to or income of a sole proprietor or independent contractor that is a wage, commission, income, net earnings from self-employment, or similar compensation and that is in an amount that is not more than $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred . . . .

§ 636(a)(36)(A)(viii).

Plaintiff emphasizes Congress's use of the word "and" between subsections (aa) and (bb), arguing that "and" has a conjunctive meaning and that if Congress had intended two separate or alternative definitions of "payroll costs," it would have used "or," which implies a disjunctive meaning. Instead, because Congress chose to link (aa) and (bb) with "and," Plaintiff argues that the definition of "payroll costs" must be read to mean that businesses may count the sum total of both their employee-compensation costs and their payments to independent contractors as "payroll costs." (Dkt. 13, at 6–7, 11–12; Dkt. 23, at 3, 6–10). Plaintiff also argues that the inclusion of the

phrase "payments of any compensation to or income of a[n] . . . independent contractor," 15 U.S.C. § 636(a)(36)(A)(viii)(I)(bb), strengthens its interpretation that small businesses were permitted to include payments made to independent contractors when calculating payroll costs. Thus, on that basis, Plaintiff asserts that the SBA was required to count Plaintiff's independent contractor payments toward the calculation, and ultimately forgiveness, of its PPP loan. (*Id.*).

On the other hand, Defendants argue that (aa) addresses payments made to employees and (bb) *separately* addresses what PPP payments could be made to sole proprietors and independent contractors, and that use of the term "and" linking (aa) and (bb) does not indicate that a small business could aggregate payments made to both employees and independent contractors in calculating its payroll costs. (Dkt. 21, at 14–17). Defendants argue that this definition is elucidated by the statutory scheme as a whole because Plaintiff's interpretation would create a conflict with numerous other provisions of the CARES Act that each, and in concert, reflect Congress's intent to exclude independent contractor costs from the definition of a small business's "payroll costs." (*Id.* at 14–24).

As this issue presents a question of statutory interpretation, the Court must first begin with the text of the statute itself. *United States v. Lauderdale Cnty., Miss.*, 914 F.3d 960, 961 (5th Cir. 2019). Following the Supreme Court's recent ruling in *Loper Bright Enterprises v. Raimondo*, the Court must "independently interpret the statute and effectuate the will of Congress subject to constitutional limits." 144 S. Ct. 2244, 2263 (2024). This means that the Court must "independently identify and respect [constitutional] delegations of authority, police the outer statutory boundaries of those delegations, and ensure that agencies exercise their discretion consistent with the APA." *Id.* at 2268. Doing so requires using "all relevant interpretive tools" to determine the "best" reading of a statute; a merely "permissible" reading is not enough. *Id.* at 2266; *see also Mayfield v. United States Dep't of Lab.*, No. 23-50724, 2024 WL 4142760 (5th Cir. Sept. 11, 2024).

After using all the relevant tools of statutory interpretation, the Court concludes that Defendants' reading of the definition of "payroll costs" is correct: The provision separately allows small business to count their employee costs under subsection (aa) and also allows independent contractors to count what they earn in compensation or income from the services they perform under subsection (bb). This interpretation stems from the text of the definition itself under 15 U.S.C. § 636(a)(36)(A)(viii) and from reading this provision in light of the statutory scheme of the CARES Act as a whole. The Court also notes that another district court in the Fifth Circuit came to the same conclusion. *See Seville Indus. LLC v. U.S. Small Bus. Admin.*, No. 6:22-CV-06229, 2024 WL 697592, at *7 (W.D. La. Feb. 20, 2024) (holding that "the SBA's interpretation of [§] 636(a)(36)(A)(viii) was based on a permissible construction of the statute."). Although that decision utilized the now defunct *Chevron* framework, the Court finds the Western District of Louisiana's analysis of the statutory interpretation issue here to be persuasive in a post-*Loper Bright* analysis, *i.e.*, in reaching not only a permissible construction of the statute, but the best one.

First, it is clear from the text of 15 U.S.C. § 636(a)(36)(A)(viii) that the definition of "payroll costs" does not allow for "the sum of" items in subsection (aa), payments to employees, and (bb), payments to independent contractors. Instead, the subsection states that "payroll costs" "means" "(aa) *the sum of* payments of any compensation . . . to employees," and "(bb) *the sum of* payments of any compensation to or income of a[n] . . . independent contractor[.]" (emphasis added). The subsection does not say in subclause (I) that "payroll costs" is "the sum of" items (aa) (payments to employees) and (bb) (compensation to independent contractors).

In other provisions of the CARES Act, where Congress intended for a figure to be calculated by adding up a list of itemized costs, it did so by specifying at the next higher stratum of the statute that the amount in question was to be calculated as "the sum of" the items listed at the level below. For example, Congress directed in Section 636(a)(36)(E)(i)(I) that a borrower's

maximum PPP loan amount be calculated as "the sum of" items (aa) (payroll costs times 2.5) and (bb) (any EIDL loan balance) listed thereunder. Similarly, the maximum loan amount for a farmer or rancher without employees is calculated, per Section 636(a)(36)(V)(ii)(I), as "the sum of" items (aa) (2019 monthly gross income times 2.5) and (bb) (any EIDL loan balance) listed thereunder. *See also* 15 U.S.C. § 636m(b) (specifying in subsection (b) that the forgiveness amount shall be "the sum of" the expenses listed thereunder in paragraphs (1)-(8)). Here, Section 636(a)(36)(A)(viii)(I) states that "payroll costs" "means" employee compensation as set forth in item (aa) and separately "means," compensation to or income of sole proprietors and independent contractors as set forth in item (bb). In other words, because "the sum of" was not included in subclause (I), (aa) and (bb) were not meant to be added together to create a "sum." Instead, the text is clear that for small business borrowers, "payroll costs" means employee-compensation costs, whereas for the self-employed— including for independent contractors who were not classified as employees and could obtain PPP loans of their own—"payroll costs" means the income or compensation they earned for themselves.

Plaintiff contends that the word "and" inserted between items (aa) and (bb) means that both subclauses must be construed conjunctively to include both compensation to employees *and* compensation to independent contractors. (Dkt. 23, at 6–10). However, as the Fifth Circuit has recognized, "when used as a conjunctive, the word 'and' has a distributive (or several) sense and a joint sense," depending on context. *United States v. Palomares*, 52 F.4th 640, 643 (5th Cir. 2022). To illustrate the difference between a distributive meaning of "and" and a joint meaning of "and," consider an example that other courts have used: A partygoer that tells her host that she likes to drink "beer and wine" uses "and" in a distributive sense, whereas another guest who says that she likes to drink "bourbon and water" uses "and" in a joint sense. *See United States v. Haynes*, 55 F.4th 1075, 1078 (6th Cir. 2022). Plaintiff attempts to read "and" in a joint sense by adding items (aa) and (bb) together. However, it is clear from context that the use of "and" between subsection (aa) and

(bb) is conjunctive and distributive because, as noted above, when Congress intended a defined term to be calculated by adding together an itemized list of costs or expenses, it so indicated by preceding the list with the phrase "sum of." Because the "and" instead was used between two subsections that each contained the phrase "sum of," Congress meant to indicate that "payroll costs" means employee compensation as set forth in item (aa) and separately "means," compensation to or income of sole proprietors and independent contractors as set forth in item (bb)—not the sum total of both.

This interpretation of Section 636(a)(36)(A)(viii)(I) is consistent with the CARES Act as a whole. Courts have a "duty to construe statutes, not isolated provisions." *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 290 (2010) (cleaned up). Accordingly, provisions "must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989); *accord Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 275 (2023); *see also JetPay Corp. v. United States Internal Revenue Serv.*, 26 F.4th 239, 242 (5th Cir. 2022) (internal marks omitted) (stating that courts "interpret a statutory provision as part of a symmetrical and coherent regulatory scheme.").

As noted above, in enacting the CARES Act, Congress permitted independent contractors to apply for their own PPP loans. 15 U.S.C. § 636(a)(36)(D)(ii). Plaintiff's interpretation of "payroll costs" would require this Court to find that Congress meant to allow PPP "double dipping"—that is, if an independent contractor was working for a small business, *both* the independent contractor and the business would be entitled to count the compensation paid to the independent contractor toward the calculation of their respective PPP loans. Courts are instructed to avoid constructions that produce "absurd results" or those that are "inconsistent with common sense." *Pub. Citizen v. U.S. Dept. of Justice*, 491 U.S. 440, 454 (1989)). While a primary purpose of the PPP was "keeping workers paid and employed," 85 Fed. Reg. at 20,814, Plaintiff makes no argument as to why

Congress would intend a result so aberrant as paying twice (from limited funds) to provide support for the same workers. Indeed, Congress made clear that it did not condone such "double dipping" by requiring applicants to certify that they had not already received PPP loans duplicative of the ones they were seeking. 15 U.S.C. § 636(a)(36)(G)(i)(IV). Plaintiff's interpretation of "payroll costs" would compel an absurd result, one inconsistent with Congress's intent as reflected by that provision and the extension of PPP eligibility to independent contractors.

Defendants' interpretation of the definition of "payroll costs" is also consistent with provisions of the CARES Act concerning loan forgiveness. As noted, the terms and conditions of PPP loan forgiveness, codified at 15 U.S.C. § 636m(b), generally authorize forgiveness in an amount equal to the sum of (i) the borrower's "payroll costs" and (ii) its payments for seven other categories of covered expenses. That amount must be proportionally reduced, however, to the extent a business laid off employees during the covered period, *id.* § 636m(d)(2), unless the business timely rehired or replaced the discharged employees, or can document an inability to do so, *id.* § 636m(d)(5), (7). Similarly, a business's loan forgiveness must also be reduced by the amount of any cut of 25 percent or more in employees' pay during the covered period, *id.* § 636m(d)(3), unless the pay cut was timely rescinded, *id.* § 636m(d)(5). Together these terms advanced the statutory objective of "keeping workers paid and employed" during the height of the coronavirus pandemic, 85 Fed. Reg. at 20,814, by providing firms that took out PPP loans a financial incentive to retain their employees (or at least to reinstate or replace them) and to maintain their pay. However, Congress included no such incentives or provisions for small businesses to retain or maintain the pay of independent contractors. *See generally* 15 U.S.C. § 636m(d).[2] If "payroll costs" included independent contractor costs, a small business could have inflated the size of its PPP loan by counting

---

[2] Lack of such incentives makes sense because independent contractors could secure financial support directly by applying for their own loans. 15 U.S.C. § 636(a)(36)(D)(ii).

independent contractor costs as payroll and then immediately terminating or reducing the compensation the business paid to its independent contractors without incurring any corresponding financial penalty at the forgiveness stage. Again, Plaintiff's reading of "payroll costs" brews incongruity, not coherence, in the statutory scheme and should be rejected. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("[A] court must . . . interpret [a] statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole.") (cleaned up).

Similarly supporting Defendants' interpretation are the documentation and certification requirements for loan forgiveness. For example, for PPP loans over $150,000, borrowers must document the number (and pay rates) of their *employees* and certify that the amount for which forgiveness is sought was used to retain them (and to pay for other covered expenses). 15 U.S.C. § 636m(e). Yet, there is no similar requirement for independent contractors, indicating Congress's intent that small businesses' payments to independent contractors are not included in "payroll costs." Further, Section 636m(e)(3)(B) requires the borrower to certify that the amount for which it is seeking forgiveness was used to (i) "retain employees" or (ii) to make payments for the seven other categories of "covered" expenses. This provision mirrors the calculation requirements of § 636m(b), further demonstrating Congress understood and intended "payroll costs" to mean the costs incurred to "retain employees," not to retain the services of independent contractors.

Last, Congress ratified the SBA's understanding of "payroll costs" when it passed the PPP Flexibility Act and the Consolidated Appropriations Act, 2021 ("CAA 2021), Pub. L. No. 116-260, 134 Stat. 1182 (2020), after the SBA enacted the first PPP IFR. The First PPP IFR announced the SBA's determination that PPP borrowers must expend at least 75 percent of their loan proceeds on "payroll costs" to qualify for loan forgiveness. At the same time, the IFR explained that under the CARES Act, payments to independent contractors "do not count for purposes of a borrower's PPP

loan calculation" or "PPP loan forgiveness," because independent contractors "have the ability to apply for a PPP loan on their own[.]" 85 Fed. Reg. at 20,813, 20,814 (§ III(2)(h), (p)). The PPP Flexibility Act, later enacted in June 2020, relaxed the IFR's payroll expenditure requirement, amending the CARES Act to provide instead that borrowers must use at least 60 of their loans for "payroll costs," rather than 75 percent, to obtain loan forgiveness. Pub. L. No. 116-142, 134 Stat. 642, § 3(b)(2) (adding 15 U.S.C. § 636m(d)(8)). But the Flexibility Act did not alter or amend the definition of "payroll costs" itself. Congress then amended the CARES Act again when it passed the CAA 2021, which authorized the SBA to guarantee so-called "second draw" PPP loans to certain businesses that obtained PPP loans under the CARES Act ("first-draw" PPP loans). CAA 2021, Div. N, § 311(a) (adding 15 U.S.C. § 636(a)(37)). The CAA 2021 made two amendments to the CARES Act's initial definition of "payroll costs," but again made no amendment overturning the SBA's interpretation that a business's "payroll costs" do not include its payments to independent contractors. "Where an agency's statutory construction has been fully brought to the attention of the public and the Congress, and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned." *New Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 535 (1982). Congress's decision to amend certain aspects of the definition of "payroll costs" but not disturb the SBA's choice to exclude from that definition payments to independent contractors affirms the SBA's understanding of Congress's intent in drafting the definition of "payroll costs." *See, e.g., Duarte v. Mayorkas*, 27 F.4th 1044, 1059 (5th Cir. 2022) ("Congress can be presumed to be aware of relevant administrative interpretations when reenacting or amending a statute . . . ") (cleaned up).

Plaintiff's counterarguments are unavailing. Aside from Plaintiff's attempts to read Section 636(a)(36)(A)(viii)(I) as mandating the sum of subitems (aa) and (bb), Plaintiff suggests that Defendants' interpretation of "payroll costs" is contrary to 15 U.S.C. § 636(a)(36)(D)(i), which

provides that "any business concern … shall be eligible to receive a [PPP] loan" if it meets certain size requirements. (Dkt. 13, at 3–4, 11–14). In support of this argument, Plaintiff cites multiple decisions holding that subparagraph 636(a)(36)(D) prohibits the SBA from imposing additional conditions on PPP eligibility, including pre-existing Section 7(a) regulations, codified at 13 C.F.R. § 120.110, that render certain categories of businesses ineligible for Section 7(a) loans. (*Id.*).[3] The problem with relying on these cases is that the SBA's treatment of independent-contractor costs under the PPP is not based on its pre-existing Section 7(a) regulations, but entirely on the terms of the CARES Act itself. The SBA's regulations on eligibility for ordinary Section 7(a) loans, 13 C.F.R. §§ 120.100, 120.101, 120.110, consider such factors as a loan applicant's size, its need for credit, and the nature of its business, but not whether its operating expenses include payments to independent contractors. Nor does the SBA's interpretation of "payroll costs" as defined by the CARES Act function as a limitation on PPP eligibility because while a business whose workforce includes independent contractors could not include payments to those contractors as "payroll costs," the business could still obtain a PPP loan as long as it had other qualifying costs and otherwise met the criteria for eligibility. Thus, the cases cited by Plaintiff, holding that the SBA may not impose additional PPP eligibility criteria, are not relevant to this case.

Plaintiff further argues that the SBA retroactively applied the First PPP IFR after Plaintiff submitted its PPP loan. (Dkt. 13, at 4). This argument fails because the First PPP IFR is properly considered an interpretative regulation. Interpretative rules "advise the public of the agency's construction of the statutes and rules which it administers." *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 97, (2015) (cleaned up). The Fifth Circuit has recognized that an interpretative rule is one that "clarifies, rather than creates, law." *Professionals and Patients for Customized Care v. Shalala*, 56 F.3d 592,

---

[3] *See, e.g.*, *DV Diamond Club of Flint, LLC v. SBA*, 960 F.3d 743,747 (6th Cir. 2020); *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1249 (11th Cir. 2020).

602 (5th Cir. 1995). Here, the First PPP IFR merely clarified that independent contractor costs "do not count for purposes of [the] borrower's PPP loan calculation" or "PPP loan forgiveness," 85 Fed. Reg. at 20,813, 20,814—an explanation of the CARES Act's meaning of "payroll costs" as the SBA already understood it. Therefore, because the IFR PPP Rule merely "clarifie[d] what the language of the statute was intended to convey, it is ultimately misleading to term it retroactive." *Anderson, Clayton & Co. v. United States*, 562 F.2d 972, 985 n.30 (5th Cir. 1977) (citing *Manhattan Gen. Equip. Co. v. Comm'r*, 297 U.S. 129, 135 (1936)). In any event, it makes no difference whether the SBA relied upon the First PPP IFR or the CARES Act to deny Plaintiff's forgiveness application because both mandate the exclusion of independent contractor costs as "payroll costs." Thus, the SBA's reliance on the IFR to reach that result, rather than the statute, would amount at most to harmless error, requiring that its decision still be upheld. *See* 5 U.S.C. § 706 (a court reviewing agency action must take "due account . . . of the rule of prejudicial error"); *Shinseki v. Sanders*, 556 U.S. 396, 406–10 (2009).

Further, as the SBA Office of Hearings and Appeals judge correctly explained in its decision denying Plaintiff's appeal, the First PPP IFR was not retroactively applied to Plaintiff's loan application. (*See* SBA OHA Decision, Dkt. 18-6, at 8, 11–12). Pursuant to 15 U.S.C. § 9012, Congress gave the SBA just 15 days to issue rules with respect to the PPP but expressly waived typical notice requirements. The First PPP IFR stated that it was effective on April 15, 2020, but it also stated that it applies to PPP applications submitted through June 30, 2020, or until funds made available were exhausted. 85 Fed. Reg. at 20,811. Thus, the First IFR was effective without publication in the Federal Register and was issued for the immediate implementation of the PPP through publication on the SBA's and Treasury's websites on April 2, 2020. As publication of the rule in the Federal Register was not required, the administrative judge properly determined that the

SBA did notify borrowers that wages paid to independent contractors could not be used as payroll costs prior to the date that Plaintiff submitted its loan application—April 3, 2020.

In sum, the Court finds that the SBA's interpretation of 15 U.S.C. § 636(a)(36)(A)(viii)(I) was correct—the CARES Act does not define "payroll costs" to include the costs that small businesses paid to independent contractors. Because the First PPP IFR simply clarified this understanding, it is not arbitrary and capricious, and the SBA did not exceed its statutory authority in issuing it or relying upon it. Accordingly, the SBA's decision to deny Plaintiff's PPP loan forgiveness application was proper because Plaintiff did not have any eligible "payroll costs" under the CARES Act. Finding that there are no genuine issues of material fact and that the SBA's denial of Plaintiff's forgiveness application was proper, the Court concludes that Defendants are entitled to summary judgment.

## IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Plaintiff's motion for judgment on the pleadings, (Dkt. 13), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment, (Dkt. 21), is **GRANTED**. Defendants are entitled to summary judgment on all Plaintiff's claims against them.

The Court will enter final judgment by separate order.

**SIGNED** on September 26, 2024.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE